ORDER AFFIRMING FINAL EMPLOYMENT DECISION
KATHARINE ENGLISH, Chief Judge.
ISSUES PRESENTED:
Petitioner was employed by Spirit Mountain Gaming, Inc. (Spirit Mountain) from October 10, 1995, until his employment was terminated on May 4, 2001. Petitioner was “involuntarily separated” from his job at Spirit Mountain because he had too many absences from work. He applied for family medical leave shortly before being terminated, but that request was denied because he “did not meet the requirements of working 1250 hours in the previous 12 months.” He appeals the termination of his employment, contending that Spirit Mountain violated Title I of the Americans with Disabilities Act (AI)A) and the Family Medical Leave Act (FMLA). As explained below, the pivotal issues on appeal are whether the Tribe and Spirit Mountain are employers within the meaning of Title I of the ADA and whether Petitioner has shown that he was entitled to FMLA leave in May 2001.
For the reasons set forth below, the Court concludes that petitioner cannot prevail on either claim.
BACKGROUND:.
As noted, Petitioner was employed as a table games dealer at Spirit Mountain Casino from October 10,1995, to May 4, 2001, *137 when his employment was terminated. During the course of his employment, Petitioner was periodically absent from work, usually due to physical ailments. Near the end of his employment, his absences resulted from epileptic seizures and recovery from those seizures. Spirit Mountain was relatively understanding regarding Petitioner’s absences from work—granting him FMLA leave at least four times, plus leaves of absence—but he nevertheless was warned that continued absences could result in his termination. By December 6, 2000, Petitioner was told that he had exhausted his available FMLA leave. He was warned again in January 2001, that he had no more FMLA leave. However, Petitioner continued to suffer health problems and to be absent from work. On April 3, 2001, he applied again for FMLA leave, relating his need for that leave to his seizures. On May 3, 2001, Spirit Mountain denied his request based on the finding that he did not have enough work hours to qualify. On May 4, 2001, his employment was terminated. The termination letter stated in pertinent part:
On April 11, 2001, you received your ninth absence. Unfortunately your request for Family Medical Leave was denied because you did not meet the requirements of working 1250 hours in the previous 12 months. Per Spirit Mountain attendance policy (section 4-3), nine absences in a 12-month period results in termination. On May 4, 2001, your employment with Spirit Mountain Casino Inc. is being involuntarily separated.
STANDARD OF REVIEW:
The Tribe’s Employment Action Review Ordinance, Tribal Code section 255.5(d)(8), provides that the Court may reverse a Final Employment Decision, in whole or in part, if the employee’s substantial rights have been denied because the decision: (A) violates applicable provisions Of the Tribal Constitution: (B) violates applicable provisions of Tribal law; (C) is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with applicable law; or (D) is not supported by substantial evidence in the record,[1] The Ordinance also provides that Spirit Mountain is an agency or instrumentality of the Tribe. Tribal Code section 255.5(a)(2).
ANALYSIS:.
1. The ADA claim—Spirit Mountain is not an “employer” subject to Title I.
Petitioner contends that Spirit Mountain failed to reasonably accommodate his disability and thus violated Title I of the ADA. Spirit Mountain responds by asserting that it is not subject to Title I of the ADA (which governs employment) and, alternatively, that even if the act applies, Petitioner is not a “qualified individual” within the meaning of the act because he cannot perform an essential job function, viz., being present on the job on a regular basis. This Court need not determine whether Petitioner is a “qualified individual” and whether, if he is, Spirit Mountain failed reasonably to accommodate is disability. Because, as explained below, Spirit Mountain is not an employer subject to Title I, the Court need not reach those related issues argued by the parties.
Title I of the ADA specifically exempts from the definition of “employer” both the United States and “an Indian tribe.” 42 USC § 12111(5)(B)(i). The issue thus becomes whether Spirit Mountain fits within *138 the tribal exception. The Court concludes that it does.
The term “Indian tribe” is not defined in the ADA. But, “ ‘it is a settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians.’ ” Giedosh v. Little Wound School Board, Inc., 995 F.Supp. 1052, 1055 (D.S.D.1997), quoting Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C., 467 U.S. 138, 104 S.Ct. 2267, 2275, 81 L.Ed.2d 113 (1984). Applying the Title I exemption for Indian tribes, other courts have recognized that Indian casinos fit within that exception.
Plaintiff now suggest that the phrase “Indian tribe” in the statutes should not be construed in such a w7ay as to include Indian Casinos as those which are excluded from the statutory definition of employer. This argument has not been accepted when it has been presented to other courts. See Giedosh [supra]; Setchell v. Little Six, Inc., No. C4-95-2208, 1996 WL 162560, at *2 (MinnApp. Apr. 9, 1996), review granted (Minn. July 10, 1996), petition for writ of cert. to the Supreme Court of Minnesota denied, 521 U.S. 1124, 117 S.Ct. 2520, 138 L.Ed.2d 1021 (1997); see also Wardle v. Ute Indian Tribe, 623 F.2d 670, 672 (10th Cir.1980) (“Indian tribes and businesses operating on or near Indian reservations are excluded from the employment prohibitions of Title VII”). Charland v. Little Six, Inc., 112 F Supp 2d 858, 865 (D.Minn.2000). See also Bishop Paiute Tribe v. County of Inyo, 275 F.3d 893, 902 (9th Cir.2002) (“As one of the only means by which the Tribe can generate income and be self-sufficient, management of the Casino is uniquely part of the Tribe’s government and infrastructure”).
Here, Spirit Mountain is a subsidiary or instrumentality of the Tribe. Among other provisions of the. Tribe’s law, (as noted at the outset of this decision) the Employment Action Review Ordinance itself states that Spirit Mountain is an agency or instrumentality of the Tribe. Tribal Code section 255.5(a)(2). Pursuant to the Ordinance, employees of Spirit Mountain are employees of the Tribe. Section 255.5(a)(3). In addition, the Ordinance states that employment opportunities provided by the Confederated Tribes of the Grand Ronde Community of Oregon, including agencies and instrumentalities of the Tribe, promote the health, safety, welfare, and economic security of employees of the Tribe and their families. Section 255.5(a)(1). Spirit Mountain’s ability to operate a casino is a direct result of its relationship to the Tribe and the Tribe’s compact with the state of Oregon. See, e.g., AT & T Corp. v. Coeur D’Alene Tribe, 283 F.3d 1156, 1159-60 (9th Cir.2002) (federal law allows tribes to engage in gaming pursuant to Indian Gaming Regulatory Act, 25 USC § 2701 et seq.). In this legal setting, to conclude that Spirit Mountain is not the Tribe for purposes of Title I of the ADA would be to ignore reality.
In arguing that Spirit Mountain should not be able to fit within the tribal exemption created by Title I, Petitioner relies heavily on the fact that Spirit Mountain is a corporation. But that fact is not determinative nor sufficient to overcome all the other evidence of the close (and necessary to gaming) link between the Tribe and Spirit Mountain. See Giedosh, 995 F.Supp. at 1054 (“the fact that the [School] Board chose to incorporate under South Dakota law does not eliminate the Board’s connections to the Tribe”).
In sum, the Court concludes that Spirit Mountain is exempt from Title I of the ADA because it is not an “employer” with *139 in the meaning of the act. That conclusion makes it unnecessary to consider the issues raised by the parties that depend on the assumption that Title I applies here.
2. The FMLA claim—Petitioner has not shown that he worked the requisite number of hours, no matter how the applicable time period is defined.
Spirit Mountain’s Family Medical leave policy provides that “FMLA is available to employees who have completed at least one year of sendee and who have worked at least 1,250 hours in the previous year.” That provision echoes the FMLA definition of the term “eligible employee,” which requires that such an employee have been employed for at least 12 months by the employer and “for at least 1,250 hours of service with such employer during the previous 12-month period.” 29 USC § 2611(2)(A)(ii). As noted above, when Spirit Mountain denied Petitioner’s final request for FMLA leave shortly before terminating his employment, the employer relied on the supposed fact that Petitioner had not worked the requisite 1,250 hours during the previous 12 months. On appeal, the parties disagree about how that 12-month period is to be computed. Is the reference to a calendar year? A fiscal year? Is it the 12-month period immediately preceding the request for FMLA leave? Is the applicable method the one most favorable to the employee, or can the employer elect the method? That disagreement, and its resolution, could be significant. It is undisputed that when Spirit Mountain terminated Petitioner’s employment it relied, at least in part, on absences that followed Petitioner’s FMLA leave request. “If those absences were, in fact, covered by the Act, [Spirit Mountain’s] consideration of those absences as a ‘negative factor’ in the firing decision violated the Act.” Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1126 (9th Cir.2001).
However, in this case the Court determines that, ultimately, it is not necessary to resolve this dispute. Whether the applicable 12-month period is the 2000 calendar year or the 12 months preceding the request for FMLA leave or some other time period, the flaw in Petitioner’s claim is that the record does not demonstrate that Petitioner worked at least 1,250 hours during any possibly pertinent time period. Because the record does not permit the Court to determine that Petitioner worked the required number of hours during any potentially applicable 12-month period, it is not necessary for the Court to decide what time period would govern in this case and how that time period would be selected.[2] This gap in the record is in all events fatal to Petitioner’s FMLA claim.
CONCLUSION:
For the reasons given above, the Court concludes that Petitioner’s claims must be rejected. Spirit Mountain is not an “employer” within the meaning of Title I of the ADA. And, because the record would not permit the Court to find that Petitioner worked at least 1,250 hours during any possibly pertinent 12-month period, the Court need not, and therefore should not, decide when such a period might begin.
IT IS HEREBY ORDERED:
1. The Final Employment Decision is affirmed.

. In this case, Spirit Mountain does not dispute that, if it is subject to Tille 1 of the ADA and it violated the act in terminating Petitioner's employment, or if it violated FMLA when it ended Petitioner’s employment, he would be entitled to relief in this proceeding.

. Petitioner has made no cogent attempt to fill this gap in the record. Perhaps recognizing this weakness in his claim, he merely asserts in his reply memorandum that he was told by someone in Spirit Mountain’s Human resources department that He had worked over 1,250 hours during 2000. That unsubstantiated claim is not sufficient.